Your Honor, the fourth case in the morning call 09 and 909. Henry Terry H. On behalf of the Avalon, Mr Patrick Charmody. On behalf of the Appalachian, Mr Scott Jacobs. Both sides are ready to proceed. You may proceed when you're ready. Good morning, Your Honor. Counsel may please. Of course, my name is Patrick Charmody and I represent Terry H. The revocation proceeding in this cause involved about two general charges, one involving Great America and the other one involving Terry's participation in group counseling. The the specific charges on the Great America trip was that Terry went on rides and went to the bathroom without supervision. The trip to Great America was a reward to Terry's ROTC squad for having participated in extra events. His squad was chaperoned by at least five adults, including Terry's mother, Eugenia, two sergeants and a curl. Terry's mother readily admitted that she didn't do rides and would watch her son on the rides. And then Terry would report back to her as soon as he got off the right. But she also said that sometimes and having been at Great America with Children and not doing rides, sometimes you can't see where they are when they're in line because there are those switchback lines. She certainly did acknowledge that. Also, as the trial court noted, it comes down to how much supervision is supervision. It seems obvious that the point of the no contract rule with Children under 12 was to prevent what happened before from happening again. Understanding that, I mean, these terms have to have meaning. It says he's ordered not to have unsupervised contact with minors under 12 years of age. Not that he's not allowed to be in the presence of minors under 12. Correct. That's what the order says. And contact must have some meaning. And there was no contact with there is no evidence doesn't establish any contact. He's violated because he's in the presence, presumably of minors. Court to take judicial knowledge. You go to Great America. You're gonna be in the presence of minors. Right? Absolutely. Want to ask to state that though. Can can presence translating the contact? That may be a little bit of a hard sell. I think counsel's nodding and acknowledging his burden on that issue. I agree with everything you said, Your Honor. Good. Let's go to the next. Um, I would just say that one of the things the court is to the Great America trip was that he was particularly concerned about how long a period of time it took would take for his mother to call him on his cell phone when they crossed paths when they were both going to the bathroom. Now, being a bit of a tech Neanderthal myself, I know some people might have trouble making a cell phone call, but it's obvious that most folks can do it in just a matter of seconds without spending a lot of time. And I think in all seriousness is problematic. Taking him to Great America may not have been the most prudent, wise thing to do given the circumstances. But again, we have to look at whether or not he violated the specific term of his supervision, and that is it talks about contact. So do we then take the leap of faith saying, Well, you know, he was there. He must have had contacted. Does the court fill in the gaps in the evidence? I don't know. So I don't think you spent a lot of time on that point. Move on to the final. The other point. Actually, you have a little bit of a more of an issue to deal with. The failure to participate in group counseling was the other violation. The court found that Terry had willfully failed to participate in group counseling. As it is noted in our briefs, it's pretty clear that Terry didn't receive didn't completely refused to participate in group counseling. He obviously showed up for all the group counseling. But Mr. Somburg said that when Terry started to talk about his own specific acts, he tended to shut down. This implies that Terry did talk about the episode to some extent, but not enough to satisfy Mr. Somburg. Somburg allowed. It was difficult for people to talk about such things in group orders, group sessions. Michelle Eaton, the probation officer, said when a little farther said it was extremely difficult for teenagers to discuss such things in front of their peers. Given the fact that Terry suffers from fetal alcohol syndrome, his bipolar, his ADHD, was sexually and physically abused as a child, it is not surprising at all that he might have more problem than the average child in opening up in group session. The case of Prusak does hold that the mental condition of a defendant is a factor to be considered in a revocation proceeding. Well, Prusak is a little bit distinguishable, is it not? Because as I understand it, Prusak, he was there at every counseling session. He did everything required of him. The only thing he did not do was accept responsibility due to his inability to remember. Now, that's a little bit different than somebody not really, quote unquote, participating in the sessions, isn't it? I agree, Your Honor. I only mentioned Prusak for the part that his mental condition is a factor to be considered. And when the trial court revoked supervision, he did not consider any of his maladies when he made the ruling. Isn't there a difference, for lack of a better term, between failing to participate and failing to try to participate? Isn't that what happened here? I would say that he tried to an extent that proved to be not enough to satisfy the probate or the counselor. He tended to shut down when he started to talk about, sounds like to me, he started to talk about it. And I would agree with Your Honor that he did make some attempts. It wasn't a complete, I'm not going to talk about it. And indeed, as soon as the petition to revoke, there's evidence in the record from the probation officer that Terry improved in group sessions. Well, he just needed a little more time to come around to be able to open up, something that the evidence also clearly shows is very difficult for anyone to do. So this is being reviewed under what standard? I think the Conway case changes it to an abuse of discretion from what it looks like. So I think that the willfulness is a factor to determine whether the trial court abused its discretion in revoking the probation. Well, I don't necessarily agree with that, but is that the position you want us to adopt? What's an abuse of discretion? No reasonable person would take the approach of the trial court? How does that help you? Well, I want you to adopt the standard that will get my client relief, obviously. Well, then you just may be urging a higher standard than you need to be suggested. An abuse of discretion being a higher standard than? No reasonable person, we would have to find who may not. No reasonable person would have taken the position of the trial court, correct? Isn't that what abuse of discretion is? I guess so. And I would say that a reasonable person shouldn't have taken the standard the trial courts made in this case under these particular facts with this particular individual. Isn't it really the trial court listens to what the therapist says or the group leader? The trial court wasn't at the sessions. The trial court can't determine whether the failure to participate was willful or not. They have to rely on the testimony of those who were there. So what can you point to in the testimony of the, I can't remember his name, the gentleman who was conducting the counseling sessions that would show that the trial court just was unreasonable in concluding that his assessment was correct, his being the counselor assessment was correct. Not to beat a dead horse, but again, the fact that the trial court didn't take into consideration the defendant's mental malady. You said that before. That's not the second time you said that. But is there anywhere in the record where the judge says, you know, I'm discounting that? Can we assume that the court considers everything even though it doesn't enunciate every single factor that it considers? I don't think you should have. No, I think that if that if he said even given Terry's mental abilities, I think he's willfully refused that I wouldn't have that be able to say that that he may have. Maybe he did, but he may not have. And the fact that he didn't say so is kind of our evidence in this case. There's also some issue about Mr. Sundberg said he didn't come with his assignments prepared for these sessions. That didn't require any embarrassment in front of a group or any reticence in front of a group. His age is his mental capacity because there's no indication in this record that he can't read right. So what about not coming prepared for the sessions and being given a chance to prepare before he was actually discharged? I don't recall. I could be wrong, Your Honor, but I don't believe that was one of the charges that revoked his probation. His probation was he wouldn't speak up about his own. Well, it was failure to participate. I thought the bottom line was and it said in some verse of humanitarian was not participating. He stated that participants were expected to come prepared with assignments for the discussion and respond to responding. I think that would go back to your honor about his failure to be able to talk about his own actions. That seems to be what the testimony was generally focused on at the hearing council. But here is the issue. Put it in practical real life terms. How would anybody ever know somebody is ordered to participate in counseling? The person shuts down and says, I can't participate because I have a problem. And that's the end of it. How would anybody ever really know what's in somebody's mind? And how would you ever be able to prove whether, you know, the person was doing it because of a problem or not doing it because of just trying to be stubborn and invasive? How would anybody ever know? Well, I think in this case, Your Honor, given his maladies and the fact that he started to participate improvement participation improved in the group sessions as of June 2008, which was the same month that the supervision petition was filed, shows that this particular individual was capable of participating and that he was not given enough time and that the trial court was in error and saying that his refusal was willful. But the trial court heard the witnesses, weighed the credibility and decided the opposite. That's correct. You said enough time. I mean, how much time is enough time? I mean, if you're given 12 months supervision, we give you three years to complete your counsel. Well, it should be I'm sorry. It should be recalled that he had participated in one on one sessions successfully for up to six months, up to six months before he was told that he needed to attend group sessions. Well, if he was, he only had a few months to go. So he was participating fully at those one on one sessions. There was no complaints about his participation at the one on one sessions. What wasn't the the sentencing order? Any counseling is deemed appropriate. Absolutely. So that's something of a red herring. He was still required to do that. I never meant to imply otherwise. I just was pointing out that he had established pattern of participating successfully in one on one sessions, and the evidence clearly shows that the group sessions are particularly difficult for people to participate in. Given Terry's we think that a little bit more time on this record where there is a showing that he had improved as of June 2008 that the trial court was unreasonable and revoking his supervision. I also raised just a quick mention of the evidentiary what I think are evidentiary errors. His mother, Eugenia, should have been allowed to testify as to Terry's assertiveness in family sessions. This bill is relevant to determine whether Terry's reluctance to participate in group sessions was actually willful. In some, your honors, Terry was doing well as evidenced by his participation in the ROTC squad, excuse me, and doing extra activities for that organization and was rewarded with a trip to Great America. As for the group sessions, we believe the trial court abused its discretion in ruling that Terry willfully refused to participate without mentioning Terry's particular maladies or the cocktail of drugs he was prescribed in an effort to ameliorate those conditions. Therefore, Terry would ask the court to reverse the trial court's decision or alternatively ask for a new hearing where the law is relevant and testimony would be omitted. Thank you. Counsel? Good morning, your honors. May I please the court? Two years ago today, Terry H's court supervision was revoked and it was revoked in respect to both the Great America incident and for Terry's failure to participate in counseling. Now, I understand that counsel would like to combine all the issues that are related to this case. They are complete and discreetly separate issues within the petition. So we find a violation and one is being upheld, upholding the violation finding at one count. We don't need to address it. That is correct. Your honor is a threshold question. Could you answer the lingering question of what standard applies? What standard review applies to this matter? Well, I thought that was an interesting change in the appellant's position between the opening brief and the reply brief. The opening brief was the state failed to prove by preponderance of the evidence count one and three of the petition. Then reply brief. It was not that the state failed to prove by preponderance of the evidence based on willfulness or whatever, you know, other aspects of the petition were out there, but that it was an abuse of discretion for the trial court to revoke supervision with respect to Terry. And that's, I mean, that's a completely different inquiry. That's that's the distinction between, you know, whether or not Terry had violated the petition and whether or not revoking supervision was the appropriate remedy. It's conceivable that he could, I mean, he could have found that there were violations, but by preponderance of the evidence, but considering his mental status, the fact that he's on medication, he could have decided not to revoke the supervision and could have put other conditions on. So they are two different processes that he's talking about. Correct. But, but that was not what was argued originally. What was argued originally was that the state failed to prove by preponderance of the evidence count one and three of the petition. Then, then the reply brief, it shifts to no, no, no, it was an abuse of discretion. It was unconscionable to revoke Terry supervision under these circumstances, which is pretty much an admission, at least if not to count one, certainly to count three of the petition. So what is our standard review on the trial court's decision? Manifest weight or abuse of discretion? Okay. It should, it should be manifest weight in with respect to the counts of the petition and whether or not the preponderance of the evidence, a violation of terms of court supervision as far as whether or not revocation of court supervision was an appropriate exercise of judicial discretion. As your honor will note it, that would be reviewed. That would be reviewed under an abuse of discretion, sort of like any other sentencing would be. But, but again, those are discrete and separate issues, just as whether or not Terry violated on count one and count three are discrete and separate issues. They can't all just be combined. So taking all that into consideration, I think here the record certainly supports without question that Terry violated the petition with respect to count three, regardless of what might be presented in mitigation, that doesn't detract from the fact that he clearly violated with respect to his failure to participate in therapy. Well, he was discharged based upon what Mr. Sundberg said, or maybe it was missed, but we'll say Sundberg. Yeah, it was Mr. Sundberg. That Sundberg said that he discharged him for his failure to participate. So the end result is he couldn't go anymore because he was discharged. Is that enough or do we have to know why he was discharged? I'm sorry. Is it enough to know that the person in charge of this counseling discharged and that's enough? That's sufficient proof? Or do we need to know and get into why there was that discharge? Well, let me let me go back to what the supervision order was. And it's my fault for not including this in the record in the appendix to the record. Terry's court supervision order is at C 25 of the record. It wasn't included in the appendix of the appellant's brief. I didn't include in the appendix to my probation orders which don't make a lot of sense. Absolutely. But what Terry was instructed in the trial court did engage in a very candid discussion with Terry that went on for about 10 pages in the record in terms of what court supervision meant in regards to sex offense and what the consequences were for violating. And the order reads that he was that no unsupervised contact with minors under 12 years didn't save age. But on the second part was to cooperate, cooperate with and participate in counseling, including Janet Wattles Mental Health Center, which is where you've seen a psychiatrist for a number of years and community based sex offender specific treatment cooperate with and participate. I mean, if he's discharged true, that would be an impediment to cooperate and participate. But if he's discharged because he didn't cooperate and participate, that would seem to me to be evidence in favor of a violation of the petition. Well, there's no indication. I mean, he went to everyone. This isn't your classic case where I couldn't get a ride. I wasn't there. There's no indication, at least I have seen in the record that he didn't attend. The problem was he didn't participate while attending. Well, and as you are pointing out, though, it's not. It's not just participating while attending. It's also completion of the assignments that you know while he was there. And it isn't just this wasn't. This wasn't done, you know, as an arbitrary matter of discretion based on Jeffrey Sundberg, the less clinical social worker. This was done in conjunction. I'm sorry. His discharge from the program was done in conjunction with probation, and the probation officer testifies, I believe in the record, but how she would transport Terry to and from therapy and that she was in contact with the social worker and that she was repeatedly explained to him the consequences of not participating in therapy. Now, the court supervision order says cooperate with and participate in sex offender specific therapy. With respect, Your Honor, that isn't ambiguous. I mean, the fact that he was discharged sure that prevented him later on from going to therapy. But the point is, if you could discharge because he was too old, he was too young, right? That's not failure to participate under the requirement of supervision. Absolutely. That's the distinction we're trying to make. I believe you say it perfectly. Counselor, just without believing the other point about the Great America trip, the mere fact that somebody goes to a place where his so facto automatically mean they're in violation of their supervision of this. Well, again, you have to have to separate it out. What are we separating? We're separating out the unsupervised and the contact part of it. And and with respect, I'd also like to add two other elements to the equation. Those two other elements being while this court in Congress said that willfulness is not an element of a probation violation, the record is clear that at the Great America field trip steps were taken willfully to allow Terry to go on this trip and evade supervision by his mother or by other people. The commission says no contact. That's true. Suggesting you should ignore the word content. I'm not suggesting you should ignore it. I'm suggesting that you shouldn't disregard reasonable inferences that flow from the record. What is the So how do we know there was contact? How do we know that there was contact? There's a difference between not the parser between presence and contact. Is there not? Contact would imply some type of an interaction, some type of a conversation, something besides mere presence. Otherwise, the order could have said, as I've seen them, you're not to be in the presence of minors under the age of 12. That would have been an easier case with it. That's true. I mean, but there's also a difference between contact and engaging as well, which would be a much a much more direct term. I think I think contact in this case means, you know, any type of interaction. And how did you prove there was some interaction? As I said, reading the record, the reasonable inferences flowing, the reasonable inferences flowing from the record, your own experience. Obviously, I don't know if you've been to Great American or Justice Hutchinson. Since they don't have any clues of the Great American. I'm enjoying the rides by myself. No, I with a 12 year old. No, I am not even going to attempt to get into that. Regardless, though, as I said, I do believe it's a reasonable inference on the record. And I also like to point out that this trip to Great America did occur at a time when Terry was failing in his sex offender therapy. I think if there ever was a danger, I mean, if you can understand Judge Albright's concern, I think if there ever was a danger of unsupervised contact, this was probably the peak of it. But you said that, you know, willfulness is really not the issue, but that there was a decision made which seems to be in contravention of his supervision to let him go on this trip. Well, that decision wasn't necessarily his. It might have been his mother's. It might have been his sergeants, and he's not going to get revoked on the basis of their decision. But by the same token, you know, he is. Well, I'll take your phrase. He's failing at sex offender therapy. He's got his issues. Wouldn't this be a good time to reward him for something that he had done successfully? Not knowing what was said to Terry and what, you know, precisely the circumstances were that might justify his ROTC trip versus, you know, as pointed out before, you know, none of us were in the sex offender counseling specifically. I really can't speak to that, whether or not he should have been rewarded by going on this trip. What I can speak to, though, and what I think is sort of, if you read the Conlon decision in particular, what I think is a little bit dangerous about it is that the subtext of prior decisions like in Brechon and Jones and talking about how we might take willfulness as to mean an element of probation revocations based on these prior decisions. It's not in the case law, correct? It's not in the case law, but my point would be that doesn't mean that willfulness shouldn't be completely excluded from the equation. I don't think, for example, that the trier fact had to completely disregard what might be a reasonable inference that flows from the record, that here under these circumstances, Terry and his mother, whether it came from the direction of his mother or not, seem to be the only two people aware of the fact that Terry was currently on court supervision for a sex offense, and nobody else seemed to have any awareness of that or was really adequately able to supervise him. Did you, in preparing your case, and I will ask counsel as well, another area of the law comes to mind and might have given us some direction with reference to contact and presence would be domestic violence because many orders of protection say you shall not have contact with. Others are much more specific. You shall not be in the presence of. Did you look there to find any help in terms of what contact is, what presence is, what engagement is? I did. I also looked at gang contact, the law of gang contact statutes as well. This, in the second district in particular, the area of law is pretty well developed. That being said, I don't know that that sheds light in particular on this probation order, or I'm sorry, on this court supervision order. In this case, I think that's also a separate issue from the context that we're considering contact. We're considering contact at an amusement park. I mean, it's kind of hard to come up with analogies for an admitted sex offender in an amusement park setting. Well, I mean, I remember a case, and I'm going to sound like Justice McClaren now. I had a case where, you know, the people, it was a domestic violence. The people were living in the same neighborhood. He's not to have any contact with her. He's walking down one side of the street. She's walking down the other, and they filed a violation. I found that wasn't a violation unless there was more. Well, an amusement park is a place where there are 12-year-old children, or under 12-year-old children, but it doesn't necessarily mean there will be contact. There's also a case, and as long as we're on the subject of Justice McClaren, and I was going back through this case law again, it's a 1991 decision by this court called People v. Saucier. I don't have the citation on me, but it's a decision where the gentleman's given a no contact order, and he repeatedly drives by the house of the young girl and the mother that he's not supposed to have contact with. He honks his horn, and, you know, he waves at them, and, you know, basically, Justice McClaren writing for the court said that while his behavior was less than honorable, it wasn't unsupervised contact. But the court never addressed the fact that it was indeed contact. I mean, here it was far away. There's no evidence in the record. There's no evidence in that decision that the girl, the young girl in question, ever saw the defendant. In that case, since Saucier drove by, that she ever waved back at him or even acknowledged his presence, that, you know, that they were granted an audience, or, you know, I mean, that there was ever any direct contact between them. I think we can, you know, spar back and forth over the meaning of contact. However, would you, to wrap up, at least acknowledge, there is a difference in being in somebody's presence, generally speaking, and actually having contact with somebody. Would you acknowledge that? The difference between being in somebody's presence and having contact with them. Having, again, I think it goes back to this distinction between having direct contact, like you and I are having a conversation, versus, you and I in contact because we're in the same room. Well, you and I are in the appellate court building. I'm upstairs in my sacred chambers, and you're down here. Am I having contact with you? No, we are not. Okay. But if we are both walking around an amusement park, and we happen to bump into each other, we happen to be, you know, I mean, again. I'm on one ride, you're on another. I'm having contact? No, no, no. But we're standing in the same line. I'm unsupervised. How are you having contact with me if I don't know you're there? Well, that's the thing. Can I go? Can I go? I think the point is, okay, all that aside, as you already pointed out, all this court needs to find is one violation of the terms of the court supervision. I think that's more than clearly evidenced with respect to count three, regardless of how this court looks at count one. Therefore, the state would respectfully ask that this court affirm the judgment of the trial court. Thank you very much. Thank you. Counsel, do you wish to reply? Just very briefly, Your Honor. Take your time. Mr. Carmody, did you find any analogous cases in domestic violence or gang and mob situations? No, outside of it, one counsel noted about the gang contact, but I just didn't see that that was particularly applicable to this case. I think something that we have to remember, it wasn't just no contact. It was unsupervised no contact or unsupervised no presence. In this case, there's no evidence of either that he was ever unsupervised in the presence or did he have contact with any children under 12 years old. That he might have, he might have, but there was no evidence to prove that he had unsupervised contact in these very brief moments when he's on a ride or in line or in the bathroom that he had any contact or was in the presence of a 12-year-old. Now, as you were talking about the crisscross lines, would presence mean if the 12-year-old was three lines back? I don't think that's what the contact order or the no contact order envisioned. Also, just as for the shifting of the standard of review, it was my impression that Conwent changed that from the time I filed the reply, the opening brief. Conwent came down before I, came down after I filed the opening brief. And Conwent says, while willfulness, fault, or culpability is not an element of probation violation, the defendant's culpability is, however, still highly pertinent to the trial court's exercise of discretion in deciding whether to revoke the defendant's probation. I think that goes to Justice Hutchinson's point that even if you found a violation, it doesn't mean you have to revoke his supervision. And unless your honors have any questions. When Terry, I think it was an agreement. He admitted the charge that led to the supervision. I've got to assume, well, ADHD, bipolar, and certainly fetal alcohol syndrome does not get, doesn't happen overnight. So he pled guilty to these charges with these problems already existing, these developmental disabilities already existing. Yeah, obviously. So the judge, we've got to, we have to believe the judge is aware of those at the time he gives him the supervision and has this 10-page conversation that Mr. Jacobson said occurred. Why does he specifically have to engage that information again when we're at this particular level, understanding that he let a plea go forward when this child is taking medication for these disorders and, you know, he's already, he's already there. Again, my recollection on this, your honor, is that a different judge gave him supervision than the one who revoked his supervision. And this judge didn't look at anything or go through any records? We just assume he just said, here you are. Obviously. This is a tough one here, right? I obviously can't read his mind about what he might have been thinking, but he certainly didn't mention it in making his findings or making his ruling. Thank you, your honor. All right, thank you very much. We'll be in recess.